MORGAN, LEWIS & BOCKIUS, LLP
ESTHER K. RO (SBN 252203)
*esther.ro@morganlewis.com*
300 South Grand Avenue, Suite 2200
Los Angeles, CA 90071-3132
Telephone: 213-612-2500
Facsimile: 213-612-2501

MORGAN, LEWIS & BOCKIUS, LLP
JOSHUA M. DALTON (pro hac vice pending)
*josh.dalton@morganlewis.com*
One Federal Street
Boston, MA 02110
Telephone: 617-951-8000
Facsimile: 617-951-8736

Attorneys for Plaintiffs Driven Performance Brands Inc. and B&M Racing & Performance Products Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DRIVEN PERFORMANCE BRANDS INC. AND B&M RACING & PERFORMANCE PRODUCTS INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SPEEDMASTER INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**TRADEMARK AND TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Driven Performance Brands Inc. ("Driven Performance") and B&M Racing & Performance Products Inc. ("B&M Racing") hereby state this complaint for violations of the Lanham Act including trademark infringement, trade dress infringement and violations of the California Business and Professions Code, against Defendant Speedmaster Inc. ("Speedmaster"), as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367(a).

2. This Court has personal jurisdiction over the defendant. On information and belief, the defendant serves customers in all 50 states, including California.

3. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff Driven Performance is a Delaware corporation with its principal place of business in Santa Rosa, CA.

5. Plaintiff B&M Racing is a Delaware corporation with its principal place of business in Santa Rosa, CA.

6. Defendant Speedmaster is, on information and belief, an Australian entity with a principal U.S. place of business in Rialto, California.

## FACTS

### Driven Performance's Use of the BANDIT Marks and the Bandit Trade Dress

7. Plaintiff B&M Racing is a wholly owned subsidiary of Plaintiff Driven Performance.

8. B&M Racing has been at the vanguard of the automotive aftermarket since the early 1950s, specializing in legendary automatic shifters, precision manual shifters, and many other transmission products. B&M Racing has become

well-known in its field for its high-performance and high-quality products with stringent quality control standards.

9. In 1994, B&M Racing began selling race shifters under the name Bandit (the "original BANDIT Mark"). Bandit race shifters were aimed at the specialized professional racing market and quickly proved to be very popular among the racing community.

10. In 2001, capitalizing on the popularity of its Bandit shifter, B&M Racing expanded its BANDIT product line by launching the Street Bandit Shifter. The Street Bandit Shifter was similar in design to the original Bandit shifter but was aimed at everyday drivers, rather than professional racers. Since its launch, B&M Racing has sold thousands of these shifters under the name Street Bandit Shifter (the "STREET BANDIT Mark"). The Street Bandit Shifter has been extensively advertised and its non-functional features, including its machined finish, narrow rear cable housing, flat stick, pistol grip handle, and trigger styling (collectively, the "Street Bandit Trade Dress") have become well-known to the public and uniquely associated with B&M Racing. Through the continuous and widespread use of the Street Bandit Shifter, B&M Racing has developed widespread recognition of, and substantial rights in, the Street Bandit Trade Dress and the STREET BANDIT Mark. B&M Racing's Street Bandit Shifter is pictured below:



11. Simultaneously with the launch of the Street Bandit Shifter in 2001, B&M Racing began offering its race car shifters under the name Pro Bandit Shifter (the "PRO BANDIT Mark"). The Pro Bandit Shifter has been extensively advertised and its non-functional features, including its machined finish, narrow rear cable housing, flat stick, pistol grip handle, and trigger styling (collectively, the "Pro Bandit Trade Dress") have become well-known to the public and uniquely associated with B&M Racing. Through the continuous and widespread use of the Pro Bandit Shifter, B&M Racing has developed widespread recognition of, and substantial rights in, the Pro Bandit Trade Dress and the PRO BANDIT Mark. B&M Racing's Pro Bandit Shifter is pictured below:




12. In addition to its extensive common-law rights in the marks, Driven Performance is the owner of three pending U.S. federal trademark applications in connection with the marks BANDIT, STREET BANDIT, and PRO BANDIT (collectively, the "BANDIT Marks"):

(a) BANDIT (Serial No. 87/325780) for "Gear shifters for use in land vehicles" in class 12 with a first use date of December 1994.

(b) STREET BANDIT (Serial No. 87/326727) for "Gear shifters for use in land vehicles" in class 12 with a first use date of December 2001.

(c) PRO BANDIT (Serial No. 87/325775) for "Gear shifters for use in land vehicles" in class 12 with a first use date of December 2001.

13. On information and belief, B&M Racing began using the original BANDIT Mark at least 22 years before the conduct complained of below and began using the STREET BANDIT Mark and the PRO BANDIT Mark at least 15 years before the conduct complained of below.

14. On information and belief, B&M Racing began using the Street Bandit Trade Dress and the Pro Bandit Trade Dress (collectively, the "Bandit Trade Dress") at least 14 years before the conduct complained of below.

15. B&M Racing provides and sells its shifters in association with the BANDIT Marks and the Bandit Trade Dress throughout the United States.

16. B&M Racing has expended substantial resources on the advertising of its shifters, using the BANDIT Marks and the Bandit Trade Dress. B&M Racing has further developed its goodwill in the BANDIT Marks and the Bandit Trade Dress through these marketing and advertising efforts.

17. As a result of its ongoing business efforts and advertising, B&M Racing has been highly successful and developed substantial goodwill in the BANDIT Marks and the Bandit Trade Dress. B&M has sold millions of dollars' worth of shifters and has approximately 80% of the automatic performance shifter market.

18. The BANDIT Marks and the Bandit Trade Dress are distinctive, and have become strongly identified with B&M Racing and its shifters. B&M's BANDIT Marks and Bandit Trade Dress are both well-known and famous in their field, and as a result the BANDIT Marks and the Bandit Trade Dress have come to and do represent extremely valuable business assets to B&M Racing. Said marks and trade dress and the business assets represented therein belong exclusively to B&M Racing.

**Speedmaster's Unauthorized Use of the BANDIT Marks and the Bandit Trade Dress**

19. In or about October of 2015, B&M Racing learned that Speedmaster was misappropriating the Bandit Trade Dress by offering for sale a shifter that was a nearly-identical design that copied the non-functional, ornamental features of B&M's Street Bandit and Pro Bandit shifters (the "Infringing Product"). A representative image of the Infringing Product is shown below:




20. Upon learning of the Infringing Product, B&M Racing sent a letter to Speedmaster, demanding that Speedmaster immediately cease and desist offering the Infringing Product for sale. Counsel for Speedmaster responded to B&M Racing's letter and the parties engaged in discussions regarding a possible resolution. However, discussions then stalled, and after failing to respond for several months, Speedmaster's counsel informed B&M Racing that it was no longer retained by Speedmaster. Despite B&M Racing's requests, the name of a successor counsel was not provided and communication with Speedmaster ceased.

21. Having been put on notice that it was misappropriating the Bandit Trade Dress, Speedmaster did not cease its infringing conduct. Instead, Speedmaster not only continued to offer the Infringing Product, but, unbeknownst to B&M Racing and without its permission, began selling the Infringing Product under the name "Race Bandit" (the "RACE BANDIT Mark"). Speedmaster's use

of the term "Bandit" in connection with a product that already looked virtually identical to the Bandit Trade Dress made consumer confusion a near certainty.

22. B&M Racing believes that consumer confusion caused by the misappropriated trade dress will increase with Speedmaster's simultaneous misappropriation of the well-known BANDIT Marks. Indeed, B&M Racing is aware of at least one confirmed incident of consumer confusion. In January of 2017, a customer contacted B&M Racing, seeking parts for a shifter he believed was manufactured by B&M Racing. The shifter turned out to be a Speedmaster knockoff shifter sold under the Race Bandit brand name.

23. On information and belief, Speedmaster serves customers in all fifty states, including California.

24. On information and belief, including the near identity of the trade dress at issue and the fact that Speedmaster adopted the RACE BANDIT Mark *after* being put on notice that it was misappropriating B&M Racing's trade dress, Speedmaster is attempting to and is intentionally and willfully misappropriating and trading on B&M Racing's goodwill and public recognition.

25. As a result of the above-described conduct, B&M Racing has been substantially harmed, and that harm is ongoing and will continue until Speedmaster ceases the complained-of conduct.

## **FIRST CLAIM**

**(Federal Unfair Competition under Lanham Act – Trademark Infringement)**

26. B&M Racing repeats the allegations in each of the above paragraphs as if fully realleged herein.

27. Through extensive use of the BANDIT Marks beginning in 1994, B&M Racing has developed extensive goodwill rights in said mark, which goodwill is protected by, *inter alia*, Section 43(a) of the Lanham Act, 15 U.S.C. § 43(a).

28. Through its activities, Speedmaster has in interstate commerce, or in a manner affecting such commerce, utilized words, terms, and names confusingly similar to the BANDIT Marks, which were and are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Speedmaster with B&M Racing, and as to the origin, sponsorship, or approval by B&M Racing of any products or services Speedmaster offers or intends to offer.

29. Such conduct is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and such violations are ongoing.

30. Through such conduct, Speedmaster has caused and continues to cause irreparable harm to B&M Racing, its BANDIT Marks, and its goodwill and reputation, and has thereby damaged B&M Racing.

## SECOND CLAIM

### (Federal Unfair Competition under Lanham Act – Trade Dress Infringement)

31. B&M Racing repeats the allegations in each of the above paragraphs.

32. Through extensive use of the Bandit Trade Dress since at least 2001 in connection with B&M Racing's shifters, the Bandit Trade Dress has become distinctive and acquired secondary meaning.

33. Speedmaster's use of confusingly similar imitations of the Bandit Trade Dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Speedmaster's shifters are associated or connected with B&M Racing's shifters, or have the sponsorship, endorsement, or approval of B&M Racing.

34. Speedmaster has made false representations, false descriptions, and false designations of origin of its goods in violation of 15 U.S.C. § 1125(a), and Speedmaster's activities have caused and, unless enjoined by this court, will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to B&M Racing's goodwill and reputation as embodied in the Bandit Trade Dress, for which B&M Racing has no adequate remedy at law.

35. Speedmaster's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Bandit Trade Dress to the great and irreparable injury of B&M Racing.

36. Speedmaster's conduct has caused, and is likely to continue causing, substantial injury to the public and to B&M Racing, and B&M Racing is entitled to injunctive relief and to recover Speedmaster's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1114, 1116 and 1117.

## THIRD CLAIM

## (Statutory Unfair Competition under California Business and Professions Code)

37. B&M Racing repeats the allegations in each of the above paragraphs.

38. Speedmaster, by virtue of its acts as alleged above, has willfully, knowingly and intentionally engaged in acts of unfair competition under California Business and Professions Code § 17200 *et seq*.

39. Defendant's conduct has caused, and if not enjoined, will continue to cause irreparable damage to the public and to B&M Racing in a manner that cannot be calculated or compensated in money damages. Plaintiff has no adequate remedy at law.

40. As a result of the foregoing, B&M Racing has been injured, and Speedmaster has received illicit profits and wrongful gains.

## FOURTH CLAIM

## (Common Law Unfair Competition)

41. B&M Racing repeats the allegations in each of the above paragraphs.

42. For over 22 years, B&M Racing has made exclusive use of the BANDIT Marks in connection with its shifters.

43. For over 15 years, B&M Racing has made exclusive use of the Bandit Trade Dress in connection with its shifters.

44. Speedmaster's use of confusingly similar imitations of the BANDIT Marks and the Bandit Trade Dress has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Speedmaster's shifters are associated or connected with B&M Racing, or have the sponsorship, endorsement, or approval of B&M Racing.

45. The BANDIT Marks and the Bandit Trade Dress are unique, distinctive, and have acquired secondary meaning.

46. Speedmaster, by virtue of its acts as alleged above, has willfully, knowingly, maliciously and intentionally engaged in acts of unfair competition under the common law of the State of California.

47. Speedmaster's conduct has caused, and if not enjoined, will continue to cause irreparable damage to B&M Racing in a manner that cannot be calculated or compensated in money damages. B&M Racing has no adequate remedy at law.

48. As a result of Speedmaster's acts, B&M Racing has been damaged in an amount not as yet determined or ascertainable. At a minimum, however, B&M Racing is entitled to injunctive relief, to an accounting of Speedmaster's profits, to damages, and to costs. In light of the deliberate and malicious use of confusingly similar imitations of the BANDIT Marks and the Bandit Trade Dress, and the need to deter Speedmaster from similar conduct in the future, B&M Racing additionally is entitled to punitive damages.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for an order of this Court holding that:

## INJUNCTIVE RELIEF

For preliminary and permanent injunctive relief that:

1. Speedmaster, its officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates and related companies and all persons acting for, with, by, through or under them, and each of them, be temporarily enjoined from,

and preliminarily and thereafter permanently enjoined and restrained from:

a. using in any manner the BANDIT Marks, the Bandit Trade Dress or any word, words, or trade dress likely to cause confusion, mistake, or deception therewith, including without limitation the RACE BANDIT Mark and related trade dress, in connection with the sale, offering for sale, distribution, marketing, advertising or promotion of shifters, and related goods and services;

b. using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Speedmaster's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the BANDIT Marks or the Bandit Trade Dress;

c. using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Speedmaster's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced by B&M Racing, or are sponsored or authorized by B&M Racing, or are in any way connected or related to B&M Racing;

d. engaging in any other activity constituting an infringement of B&M Racing's trademark or trade dress rights or otherwise unfairly competing with B&M Racing in any way; and

2. Speedmaster be directed to destroy, remove the name "Race Bandit" and its current trade dress and/or associated logos from all shifters, promotional materials, advertisements, marketing materials, or other goods, services, or products that bear the name "Race Bandit" or the current trade dress and/or associated logos, including any documents and other tangible things that discuss, describe, mention, or relate to such goods, services or products;

3. Speedmaster be directed to cease selling any products featuring the Bandit Trade Dress and destroy any remaining inventory of products featuring the Bandit Trade Dress;

4. Speedmaster be directed to transfer to B&M Racing any domain names that include the word "Bandit" or a confusingly similar term that are in its possession;

5. Speedmaster file with the court and serve upon B&M Racing's counsel within thirty (30) days after entry of Judgment a report in writing under oath setting forth in detail the manner and form in which Speedmaster has complied with the requirements of the Injunction and Order.

**DAMAGES**

1. Speedmaster be required to account for and pay over to B&M Racing all profits realized by Speedmaster by reason of the unlawful acts alleged herein, in an amount to be proven at trial;

2. B&M Racing be awarded all damages caused by the acts forming the basis of this Complaint;

3. Based on Speedmaster's knowing and intentional use of confusingly similar imitations of the BANDIT Marks and the Bandit Trade Dress, the damages award be trebled and the award of Speedmaster's profits be enhanced as provided for by 15 U.S.C. § 1117(a) and California Business and Professions Code § 14250;

4. Speedmaster be required to pay to B&M Racing all of its costs, disbursements, and reasonable attorneys' fees that B&M Racing has and will incur in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in the Complaint;

5. Based on Speedmaster's willful and deliberate infringement and dilution of B&M Racing's marks and trade dress, and to deter such conduct in the future, B&M Racing be awarded punitive damages.

**OTHER RELIEF**

1. For such other and further relief as the court may deem appropriate to prevent the infringement, disparagement, or dilution of the BANDIT Marks and/or the Bandit Trade Dress, and to prevent further and/or additional acts of unfair

competition by Speedmaster.

2. For prejudgment interest.

3. For attorneys' fees and costs.

4. For such other relief as the court deems proper.

Dated: February 14, 2017

MORGAN, LEWIS & BOCKIUS LLP
Esther K. Ro
Joshua M. Dalton (pro hac vice pending)

By /s/ Esther K. Ro
Esther K. Ro
Attorneys for Plaintiffs DRIVEN PERFORMANCE BRANDS INC. AND B&M RACING & PERFORMANCE PRODUCTS INC.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims that are triable to a jury.

Dated: February 14, 2017

MORGAN, LEWIS & BOCKIUS LLP
Esther K. Ro
Joshua M. Dalton (pro hac vice pending)

By /s/ Esther K. Ro
Esther K. Ro
Attorneys for Plaintiffs DRIVEN PERFORMANCE BRANDS INC. AND B&M RACING & PERFORMANCE PRODUCTS INC.